REQUESTED BY: Senator Chris Beutler Room 804 State Capitol Lincoln, Nebraska 68509
Dear Senator Beutler:
In your letter of May 4, 1981, you raise several questions concerning amendments to LB 134 which generally proposes changes to the Nebraska Political Accountability and Disclosure Act and which is now before the Legislature for consideration.
You first inquire as to our opinion of the constitutionality of an amendment to LB 134 which would add a new subparagraph (4) to Neb.Rev.Stat. § 49-1434 (1980 Supp.). You inform us that this new subsection to the section defining lobbyists would provide an additional definition for the term lobbyist as `. . . Any person except a political candidate or candidate campaign committee who solicits funds or supports, collects dues or expends money when such solicitation, collection or expenditure is in excess of one thousand dollars and such person uses such funds to influence any political issue within the State of Nebraska.'
Our first concern is a practical one. By placing this new definition at the end of presently existing Neb.Rev.Stat. § 49-1434 (1980 Supp.), it would follow the exceptions to the term lobbyist presently contained in subparagraphs (3)(a)(b)(c) and (d). A question of construction arises as to whether or not a definition which follows subsection (3) is covered by the exemptions contained therein. Perhaps this is a matter which should be clarified by the Legislature itself.
Whether or not the exceptions contained in subparagraph (3) apply, may have great bearing on whether or not proposed subsection (4) can survive close constitutional scrutiny. Also of note is the fact that while this proposed amendment would concern the definition of the term `lobbyist' as amended, it would appear to conflict with the definition of the term `lobbying' which is set forth in Neb.Rev.Stat. 49-1433
(Reissue 1978). Here again, an expression of legislative intent of the breath of this amendment would be most helpful in resolving any questions concerning this proposed language's constitutionality.
Assuming for the sake of discussion that it is the Legislatures intent that proposed subsection (4) not be subject to the exemptions contained in the present subsection (3) and that this language not be tempered by the definition of the term `lobbying' found in Neb.Rev.Stat. § 49-1433 (Reissue 1978), we will give consideration to the question of this language's constitutionality.
The leading case on this subject is the decision of the United States Supreme Court in Buckley v. Valeo, 424 U.S. 1, decided by that court in 1976. While this case directly concerned an attack upon the Federal Election Campaign Act of 1971, the court's analysis of the questions presented there, are most instructive on the questions raised by your inquiry. In reading this decision, it is evident that the United States Supreme Court drew a distinction between restrictions on an individual's right to expend money personally on behalf of a candidate or a cause, and restrictions on an individual donating money to a candidate or a candidate's committee, where the candidate or committee is free to expend monies in any manner they see fit. The court appeared to be more concerned with protecting one's right to individualistic political expression than to his unfettered right to make contributions generally to political candidates.
At the outset of their opinion, the court announced that even a significant interference with protected rights of political association, may be sustained if the state demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgment of associational freedoms guaranteed by the First Amendment to the Constitution of the United States.
The court did caution however, that the First Amendment affords the broadest protection to such political expression in order `to assure [that] unfettered interchange of ideas for the bringing about of political and social changes desired by the people.' Buckley v. Valeo, supra, at424 U.S. 14.
In that case they did find unconstitutional, certain restrictions on limitations on individuals' political expenditures although they did uphold portions of the federal act which required reporting and disclosure of political expenditures and activities. In upholding such requirements, however, they did state that they had long recognized that significant encroachments on First Amendment rights by compelling disclosure, could not be justified by a mere showing of any governmental interest. The court stated: `. . . We have required that the subordinating interests of the state must survive exacting scrutiny. We have also insisted that there be a `relevant correlation' or `substantial relation' between the governmental interests and the information required to be disclosed.' [Citations omitted] Buckley,supra, at 424 U.S. 64.
The court did go on to set forth some of the governmental interests which might survive this close constitutional scrutiny. First, they suggested that disclosure provides the electorate with information as to where political campaign monies come from and how it is spent by the candidates which assists the voters in evaluating those who seek elected office. As the court suggested, this allows the voters to place each candidate in the political spectrum more precisely than is often possible solely on the basis of party labels and campaign speeches. Buckley v. Valeo,supra, at 65.
Secondly, the court suggested that disclosure requirements deter actual corruption and avoid the appearance of corruption by exposing large contributions and expenditures to the light of publicity. The court suggested that this exposure may discourage those who would use money for improper purposes either before or after the election.Buckley v. Valeo, supra, at 65.
Finally, the court suggested that the record which is possible through reporting requirements is an essential means of gathering the information necessary to detect violations of contribution limitations which they held to be constitutionally valid.
Therefore, it would appear as though expanded reporting or disclosure requirements created by the broadened definition of the term lobbyist would be held constitutionally valid if the Legislature expressed an intent to promote such governmental interests. We are not aware at this time of any such declaration having been made by the Legislature. It is, therefore, difficult for us to assess the constitutionality of this proposed amendment without knowing whether or not the Legislature intends to advance and promote such interests. It does appear with certainty however, that in the event either the Legislature did not intend to advance such interest or in the event the means taken by it to accomplish those results, were not closely drawn to some other valid intentions and did unnecessarily therefore abridge associational freedom, the provision would no doubt fail. Buckley v. Valeo, supra, at 25.
You next inform us of an amendment to LB 134 which would as you indicate, require the campaign statements of political committees to disclose `the value of services provided without compensation by any individual who volunteers to provide services on behalf of a candidate or political committee for more than twenty hours during a year.' You ask us to consider whether or not such a provision has an overriding governmental purpose in view of the First Amendment rights, and whether or not it would have a chilling affect on the exercise of these rights and privileges and direct our attention to the decision previously discussed inBuckley v. Valeo.
It is not within our power to declare for what purpose legislation is enacted, or in this case proposed, that being solely the duty of the Legislature. However, we would suggest that unless there was an avowed legislative intent such as discussed above, such a provision most likely would not survive close constitutional scrutiny.
You next call our attention to a proposed amendment to LB 134 concerning a proposed change in what is now Neb.Rev.Stat. § 49-1490 (1980 Supp.), and which would provide that the furnishing of transportation by a lobbyist or his principle to a public official in connection with his or her official duties would not be a prohibited gift. You specifically ask whether or not the solicitation or receipt of such transportation would be a violation of a senator's oath of office. The oath of office in question is found in Article XV, Section 1, of the Constitution of the State of Nebraska and provides as is pertinent to inquiry: `. . . I . . . have not accepted, nor will I accept or receive, directly or indirectly, any money or other valuable thing from any corporation, company or person, . . . for any official act or influence. . . .' Although not specifically raised by you, we also have concerns over the language found in ArticleIII, Section 7, of the Constitution of the State of Nebraska which is pertinent here: `. . . Members of the Legislature shall receive no pay not not perquisites other than said salary and expenses, . . . .'
At the outset of our examination, it is not clear to us whether or not it is the legislative intent to authorize casual transportation by a lobbyist of a senator or whether this would include such things as providing a car to a senator during a legislative session, or perhaps even between sessions.
We have been of the opinion previously at least with respect to Article III, Section 7, of the Nebraska Constitution that a senator when travelling on official legislative business, such travel having been expressly authorized by the Legislature or the Legislative Counsel, and such travel being at the direction of the Legislature, incurs expenses on behalf of the Legislature, and reimbursement thereof to the particular senator does not violate this constitutional prohibition. Report of the Attorney General, No. 178, Dated January 30, 1978. Therefore, if such transportation were provided by a lobbyist under these conditions, such would no doubt not constitute a violation of Article III, Section 7.
The question nevertheless remains as to whether or not the senator would be receiving some `. . . other valuable thing from . . . [any] person . . . for any official act or influence . . .' for any vote that senator might give or withhold, and therefore be in violation of Article XV, Section 1, of the Constitution of the State of Nebraska. It would appear to us that in order to have a violation of this constitutional section, the senator would have to have an intent to let the act of the furnishing of transportation influence his vote and while under Buckley v. Valeo, such activity could no doubt be prohibited as constituting an appearance of impropriety, we do not believe that the direct authorization of such, if it meets the requirements of being done on official legislative business would constitute a violation of either the senator's oath of office or Article III, Section7, of the Constitution of the State of Nebraska. It may also be that this would be a matter exclusively for the Legislature to determine under Article III, Section 10, of the Nebraska Constitution.
Finally, you call to our attention an amendment to LB 134 which would provide that no registered lobbyist might purchase or be solicited to purchase tickets for political campaign fund raising activities. As you observe, it appears that this provision would prohibit a lobbyist from making any political contributions by means of purchasing a ticket for any political campaign fund raising activities.
In Buckley v. Valeo, supra, as pointed out above, the United States Supreme Court drew a distinction between limitations on direct individual political expenditures and contributions to candidates or candidates' campaign committees.
They appeared to be suggesting that a state would have to meet a much higher burden in order to restrict or eliminate direct political expenditures, however, the burden might be slightly less where contributions are concerned.
Even so, as with reporting disclosure requirements, the court suggested that the state would have to establish strong and compelling state interests in order for such restrictions to be upheld. Here again, inasmuch as the Legislature has not yet considered, much less enacted such a proposal, it is impossible for us to speculate as to the interests the Legislature intended, or may intend to further by the enactment of such a prohibition. We would suspect that if the Legislature were to enact such a prohibition based upon governmental interests as are set out in response to your first question above, that most likely such a restriction would survive constitutional scrutiny.
As is apparent from our analysis, the constitutionality of much of that which we discussed, will be dependent upon the purpose for which these restrictions and requirements are proposed. For that reason and for the reason that you have indicated a desire to have our response as quickly as possible, we have not been able to give these matters the exhaustive analysis they require.
Additionally, it is difficult to speculate as to how our Supreme Court or a Federal Court might view these particular questions given the fact that it is apparent from reading the decisions from other lower courts that each review of each individual restriction has been accomplished on a case by case basis.
Sincerely, PAUL L. DOUGLAS Attorney General Terry R. Schaaf Assistant Attorney General